# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cv-60019-SINGHAL/DAMIAN

MARGARITA LUGO,

      Plaintiff,

vs.

KILOLO KIJAKAZI, Acting Commissioner
of Social Security Administration,

      Defendant.

_____/

## REPORT AND RECOMMENDATION ON
## CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF NOS. 17 & 18]

THIS CAUSE is before the Court on the parties' Cross-Motions for Summary Judgment, filed September 24 and October 25, 2021. [ECF Nos. 17 and 18]. Plaintiff, Margarita Lugo ("Plaintiff" or "Ms. Lugo"), seeks reversal and remand of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claim for a period of disability and disability insurance benefits ("DIB"). This matter was referred to the undersigned by the Honorable Raag Singhal, United States District Judge, for a Report and Recommendation. [ECF No. 21]. *See* 28 U.S.C. § 636(b)(1)(B).

The undersigned has reviewed the parties' memoranda [ECF Nos. 17, 18, and 20], the administrative record [ECF No. 13], the pertinent portions of this Court's record, and all relevant authorities and is otherwise fully advised in the premises. For the reasons set forth below, the undersigned recommends the Court deny Plaintiff's Motion for Summary Judgment [ECF No. 17], grant Defendant's Motion for Summary Judgment [ECF No. 18], and affirm the decision of the Commissioner.

# I.    BACKGROUND

### A.    *Ms. Lugo's Claim For Benefits*

Ms. Lugo alleged disability beginning on December 28, 2016 due to back, hand, and knee injuries. (R. 95–96).[1] She was forty-six (46) years old on her alleged onset date and fifty (50) years at the time of the administrative hearing, making her a "person closely approaching advanced age" under Social Security regulations. (R. 73); *see* 20 C.F.R. § 404.1563(d). Ms. Lugo completed high school and one year of college and obtained certified nurse assistant and phlebotomy certificates. (R. 18, 77, 87–88, 251). She has past relevant work experience as a bus driver. (*Id.*).

### B.    *Ms. Lugo's Testimony*

On April 1, 2020, Ms. Lugo appeared, represented by counsel, and testified at a telephonic hearing before an Administrative Law Judge ("ALJ"). (R. 67–94). Ms. Lugo lives in a one-story house with her husband, who works as a mailman. (R. 75, 80). Ms. Lugo testified that she occasionally drives to doctor's appointments when her husband is unable to take her, but she prefers not to drive. (R. 76). Ms. Lugo's husband, sister, or cousin take care of shopping for groceries or Ms. Lugo orders them online. (R. 76–77).

Ms. Lugo worked for the New Jersey Transit Corporation from 2005 to 2016 driving a 45-foot transit bus, picking up passengers along the route, and helping them with their luggage. (R. 78–79). She stopped working on December 28, 2016 due to a fall as she was getting off the bus which caused injuries to her back, knee, and hand. (R. 79–80). Ms. Lugo

---

[1] All references to "R." refer to the transcript of the Social Security Administration filed on July 23, 2021. [ECF No. 13]. The page numbers listed in this document refer to the bold numbers found on the lower right-hand corner of each page of the transcript, as opposed to those assigned by the Court's electronic docketing system or any other page numbers.

testified that she has since received some earnings through disability payments and worker's compensation benefits. (*Id.*).

In April 2019, Ms. Lugo moved to Florida because she thought the weather would be better on her back and because her husband was transferred for work. (R. 80, 111, 226). They started living in an apartment but then moved to a one-story house because the elevator at the apartment building had issues and it was very hard for Ms. Lugo to go up the stairs. (*Id.*). When asked about difficulties she experiences due to her back pain, Ms. Lugo stated:

> I've had complete difficulty. I can't even cook. The extent of my cooking is pressing the button on the microwave. Normally, I can't do anything for myself. My husband actually has to help me even in the shower wash[ing] my feet because I can't really reach down. And I need help with opening a bottle of water because it's hard on me. I have to get an electric toothbrush because I really have no -- no type of strength in my right hand. [When s]tanding more than 20 minutes, I get pain in my lower back that radiates in my hip and down my legs. [When s]itting more than 15 minutes, my legs and my feet go numb. You know, I get the pins and needles and tingling and throbbing in my lower back and my legs. So it's been very, very difficult for me in doing anything.

(R. 81). Ms. Lugo testified that she has difficulty sleeping at night because "it's hard for [her] to get in a comfortable position," and she is only able to get an hour of uninterrupted sleep. (R. 82–83).

Ms. Lugo testified that she has trouble lifting things and bending or crouching down because she has problems with her knee, has no strength in her hands, and everything causes her pain. (R. 83). The most she can lift is a water bottle. (*Id.*). She has difficulties serving herself and depends on her husband or others to serve her. (R. 84). Ms. Lugo stated she even has difficulty preparing a bowl of cereal because she is unable to open the cereal box if it is brand new and she is unable to lift the container of milk. (*Id.*). She drops things and uses a gopher to pick up items from the floor. (*Id.*). She usually wears slip-on shoes because she has trouble putting on socks or reaching down to tie her shoes. (*Id.*). And she explained that she

has difficulty putting on a shirt or a pair of pants and depends on her husband to help her get dressed, and she usually wears clothing that does not require buttoning around the waist or wears her pajamas or nightgowns all day. (R. 84–85).

As for her medication routine, Ms. Lugo stated that she takes plenty of medications throughout the day and at bedtime and suffers from side effects, including dizziness, drowsiness, and mood swings. (R. 85). She avers that she is "dealing with the pain even more" because she is afraid her pain medication might cause more serious health issues. (R. 86).

C.   *Relevant Medical Evidence And Expert Opinions Regarding Ms. Lugo*

The record contains treatment notes from numerous doctors and other professionals regarding Ms. Lugo's conditions. Below is a non-exhaustive summary of the relevant medical evidence and expert opinions regarding Ms. Lugo's impairments, as well as the opinion of the impartial vocational expert.

1.   *Relevant Medical Evidence And Expert Opinions Regarding Ms. Lugo*

The medical records indicate that Ms. Lugo reported having pain in her lower back since 2014 and pain in her right thumb and left knee due to the injuries she suffered in 2016 after falling at work. (R. 406). She has been treated for these injuries through surgical operations and physical therapy.

In January 2015, Ms. Lugo was treated at the Metropolitan Surgical Institute, L.L.C. in New Jersey for sacroiliac joint pain and underwent a sacroiliac joint block procedure in which she received an injection. (R. 336–337, 350–351). In December 2017, Ms. Lugo underwent a lower back lumbar fusion at the L5-S1 level. (R. 354, 398, 413).

Ms. Lugo then attended physical therapy sessions from January 10 through March 22, 2018. (R. 371–392). During that time, her complaints included: "moderate pain across her

low back" (R. 371–372, 376–377, 382, 385, 389); "increased tightness with prolonged standing and walking" (R. 374); "tingling down both legs and into her feet" (R. 375, 380); "mid and lower back tightness" (R. 383); and "sharp pain in right hip when walking and bending." (R. 388). Treatment notes from her physical therapy sessions on January 25, February 1, March 1, and March 16, 2018, reflect that Ms. Lugo reported "temporary relief from moderate pain"; "less pain and more mobility"; and "decreased pain in her low back" following the prior therapy session. (R. 378, 381, 386, 390). All the physical therapists and assistants who treated Ms. Lugo reported she was "tolerating the treatment plan well." (R. 371–392).

Records indicate that Ms. Lugo was treated by Jaimie Bick, P.T., from April 19 through May 14, 2018. (R. 418–441). In his initial assessment, Bick noted that Ms. Lugo's "[c]linical findings are consistent with a musculoskeletal pattern of impaired joint mobility, motor function, muscle performance, range of motion, and reflex integrity associated with spinal disorders." (R. 419–420). A note from a therapy session on April 23, 2018 states that Ms. Lugo performed various exercise activities as part of her treatment plan, and she "tolerated her session with mild complaints of pain." (R. 422–424). Notes from subsequent therapy sessions indicate that Ms. Lugo experienced "decreased trunk rotation with ambulation," she feared "to move at a normal pace," and exhibited "no capacity for advancement of therapeutic activity during treatment." (R. 430, 433, 436). On May 14, 2018, Ms. Lugo was discharged from physical therapy "due to not completing [her] plan of care." (R. 441).

On February 25, 2019, Ms. Lugo saw Ronald Bagner, M.D., for her physical impairments. (R. 409–410). Ms. Lugo reported lower back pain that radiates to the right buttock and tingling and numbness in her feet. (*Id.*). She told Dr. Bagner that she has difficulty

driving, bending, and sitting, and she has trouble with her right grip and using her right hand. (*Id.*). In his report, Dr. Bagner noted that Ms. Lugo "ambulates with marked difficulty" and "gets dressed and undressed without assistance." (R. 409). On examination, Dr. Bagner found that Ms. Lugo experienced pain on straight leg raising at 50 degrees on the left and right positions while lying and seated. (R. 410). He noted that Ms. Lugo's knees were stable and showed a normal range of movement. (*Id.*). Dr. Bagner diagnosed Ms. Lugo with pain on movement of the lower back, pain on straight leg raising, and pain on movement of the knees. (*Id.*). X-ray scans of Ms. Lugo's lumbar spine taken that day revealed "prior surgery of posterior fusion at the L5-S1 level." (R. 413–414). Stephen Toder, M.D., opined that Ms. Lugo had "[m]ild degenerative changes most pronounced at the L1-L2 level" of the lumbar spine. (R. 413).

On May 16, 2019, Ms. Lugo saw Noah Lee, D.O., for evaluation of her lower back pain. (R. 443–445). Ms. Lugo reported moderate lower back pain that is "persistent" and "radiates to left lower extremity." (R. 443). On examination, Dr. Lee found a normal gait and full range of motion of the extremities. (R. 444). Ms. Lugo exhibited normal muscle strength but a decreased grip strength on the right wrist. (*Id.*). Dr. Lee observed no sensory deficits. (*Id.*). He diagnosed Ms. Lugo with lumbar disk disease and pain on right wrist and referred her to a doctor for pain management and to a hand surgeon for her wrist. (R. 445, 456).

A magnetic resonance imaging ("MRI") scan of Ms. Lugo's lumbar spine, performed upon referral on June 17, 2019, revealed "moderate right neural foraminal encroachment and right exiting L5 nerve impingement in conjunction with facet arthrosis." (R. 465–466).

Between August to December 2019, Ms. Lugo consulted specialists at Meli Orthopedic Centers of Excellence for an evaluation of her right wrist pain. (R. 481–489). An MRI of the right wrist, performed on September 23, 2019, revealed postsurgical changes,

subchondral cystic changes, and thickening of the tendon. (R. 479–480). On December 2, 2019, Gayan Poovendran, M.D., saw Ms. Lugo for a physical exam and found "[n]ormal strength, sensation and range of motion, bilaterally" of the extremities and "no pain with extension of the back." (R. 481). Dr. Poovendran noted that a corticosteroid injection was not effective at managing Ms. Lugo's wrist pain. (R. 482). He counseled Ms. Lugo regarding surgery, proposed a platelet rich plasma injection as an alternative treatment plan, and recommended a motion control brace for the right wrist. (*Id.*).

On March 4, 2020, Dr. Lee prepared a Physical Medical Source Statement concerning Ms. Lugo's impairments. (R. 490–493). Dr. Lee characterized Ms. Lugo's pain as "sharp in the back, burning down legs, tingling in legs" and noted that medications caused her dizziness and drowsiness. (R. 490). According to Dr. Lee, Ms. Lugo can sit for fifteen (15) minutes and stand for twenty (20) minutes at one time and would require a job that permits shifting positions from sitting, standing, or walking. (R. 491).

Similarly, on March 11, 2020, Tom Macek, M.D., prepared a Physical Medical Source Statement. (R. 495–499). Dr. Macek diagnosed Ms. Lugo with low back pain, bilateral hip pain, and bilateral knee pain. (R. 495). He noted that Ms. Lugo's lumbar fusion was unsuccessful. (*Id.*). Dr. Macek characterized Ms. Lugo's pain as "tingling, pins [and] needles on both legs" and "pain in lower back that radiates down legs all day," and the pain level was documented as 6 to 7 out of 10. (*Id.*). According to Dr. Macek, Ms. Lugo could walk up to one block without rest or severe pain, and she could sit for fifteen (15) minutes and stand for twenty (20) minutes at one time. (R. 496). Like Dr. Lee's medical source statement, Dr. Macek opined that Ms. Lugo could lift less than ten (10) pounds frequently, never twist, stoop, crouch/squat, or climb ladders, and rarely climb stairs. (R. 497).

2. *State Agency Physician's Opinions*

The record also contains two medical assessments completed by two state agency review physicians: Dr. Howard Goldblas and Dr. Shakra Junejo. (R. 95–105, 118–130). However, neither state agency physicians met or examined Ms. Lugo in person.

### a. Dr. Howard Goldblas

On March 11, 2019, Dr. Howard Goldblas completed a Disability Determination Explanation ("DDE") at the initial level. (R. 95–105). Dr. Goldblas concluded that Ms. Lugo's degenerative disc disease was a severe impairment. (R. 100). Considering Ms. Lugo's medical reports, Dr. Goldblas determined that Ms. Lugo could occasionally carry ten (10) pounds, frequently lift and/or carry less than ten (10) pounds and stand and/or walk (with breaks) for a total of four (4) hours. (R. 101). Dr. Goldblas also opined that Ms. Lugo could sit for a total of about six (6) hours in an 8-hour workday and push and/or pull with no limits, other than lift/carry constraints. (*Id.*).

Regarding postural limitations, Dr. Goldblas opined that Ms. Lugo could climb ramps/stairs occasionally; never climb ladders, ropes, and scaffolds; balance, stoop, kneel, and crouch occasionally; and never crawl. (R. 101–102). As for manipulative limitations, Dr. Goldblas opined that Ms. Lugo could reach any direction (including overhead) without limits but has limited handling and fingering with her right hand. (R. 102). Dr. Goldblas concluded that Ms. Lugo has the RFC to perform sedentary work, and that she was not disabled. (R. 104).

### b. Dr. Shakra Junejo

On July 25, 2019, Dr. Shakra Junejo completed a Disability Determination Explanation at the reconsideration level. (R. 118–130). Ms. Lugo reported that in the time

between Dr. Goldblas' DDE and Dr. Junejo's reconsideration, she could not walk, sit, or stand for more than 15 to 20 minutes without having "a shooting pain" in the lower back and that she gets anxiety when getting in any vehicle. (R. 119).

Dr. Junejo found Dr. Goldblas' initial finding of Ms. Lugo's degenerative disc disease as the only medically determinable impairment to be accurate. (R. 124). Dr. Junejo reviewed the updated medical evidence in the record and noted that Ms. Lugo had a positive straight leg raising test and decreased grip strength on the right hand. (R. 128). Despite the supplementation of updated medical records, including the June 17, 2019 MRI scan, Dr. Junejo found that Ms. Lugo's impairments did not meet or medically equal any of the listed impairments, including Listing 1.04 concerning spinal disorders. (R. 125–130).

Dr. Junejo opined that Ms. Lugo could occasionally lift ten (10) pounds, frequently lift and/or carry less than ten (10) pounds, and stand and/or walk (with normal breaks) for a total of four (4) hours in an 8-hour workday. (R. 126). Dr. Junejo also opined that Ms. Lugo could sit for a total of about six (6) hours in an 8-hour workday and push and/or pull with no limits, other than lift/carry constraints. (*Id.*). As for postural limitations, unlike Dr. Goldblas' initial DDE, Dr. Junejo opined that Ms. Lugo could climb ramps/stairs frequently; never climb ladders, ropes, and scaffolds; and balance, stoop, kneel, crouch, and crawl frequently. (R. 126–127). Regarding manipulative limitations, Dr. Junejo opined that Ms. Lugo could reach any direction (including overhead) without limits but has limited handling and fingering with her right hand. (R. 127). Like Dr. Goldblas' DDE, Dr. Junejo concluded that Ms. Lugo has the RFC to perform sedentary work, and that she was not disabled. (R. 129).

### 3. *Vocational Expert Testimony*

At the hearing before the ALJ, an impartial vocational expert ("VE") testified that a hypothetical individual with Ms. Lugo's same age during the alleged period of disability (*i.e.*,

46 years to about 50 years), education, and work experience, who can perform a full range of sedentary work; can lift up to ten pounds, occasionally, and less than ten pounds, frequently; can stand and walk for four hours and sit for six hours in an eight-hour day; can occasionally climb ramps and stairs, but never climb ladders, ropes, and scaffolds; can occasionally balance, stoop, kneel, crouch but never crawl; can frequently handle and finger with the right upper extremity; and can have no exposure to hazards, such as unprotected heights, cannot perform any of her past work but can perform sedentary work. (R. 89). The VE provided three representative occupations such a person could perform that exist in significant numbers in the national economy: call out operator, charge account clerk, and addresser. (R. 90–91).

Ms. Lugo's attorney asked the VE whether any of the listed occupations would be precluded if the hypothetical individual were limited to occasional handling and fingering with the right upper extremity. (R. 92). The VE responded that the charge account clerk and addresser occupations would be precluded but the call out operator would remain. *Id.* When asked to assume such hypothetical individual were off task 15% of the day due to pain and side effects from medications, the VE stated that would be excessive and unacceptable for the listed occupations. (R. 93). Additionally, the VE testified that employers typically allow for six to ten days per year of absence, even if unpaid, but an individual who is absent two days a month due to pain and weakness would be viewed as an unreliable employee and would lose her employment. *Id.*

## II.   PROCEDURAL HISTORY

Ms. Lugo applied for a period of disability and DIB benefits on November 27, 2018. (R. 11, 232–233).[2] Her application was initially denied on March 11, 2019, and again, upon

---

[2] Ms. Lugo did not apply for Social Security Income ("SSI") benefits. (R. 232).

reconsideration, on July 30, 2019. (R. 132–136, 141–146). Ms. Lugo then requested a hearing, which was held before an ALJ on April 1, 2020. (R. 67–94, 147–149). On April 21, 2020, the ALJ issued a partially favorable decision finding that Ms. Lugo became disabled on March 5, 2020 but was not disabled prior to that date. (R. 11–21). Ms. Lugo requested review of the ALJ's Decision. (R. 227–228). On November 13, 2020, the Appeals Council denied her request for review, rendering the ALJ's Decision as the Commissioner's "final" determination. (R. 1–3). *See* 42 U.S.C. § 405(g); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

Having exhausted her administrative remedies, on January 5, 2021, Ms. Lugo filed the instant action seeking judicial review of the Commissioner's Decision. [ECF No. 1]. *See* 42 U.S.C. § 405(g). On March 24 and June 25, 2021, the Court stayed the case for sixty-days or until the date upon which the Commissioner produced the electronic certified administrative record. [ECF Nos. 9, 11]. The administrative record was filed on July 23, 2021. [ECF No. 13]. Thereafter, Ms. Lugo filed a Motion for Summary Judgment on September 24, 2021. [ECF No. 17].

Defendant, Kilolo Kijakazi, Acting Commissioner of the Social Security Administration, filed a Cross-Motion for Summary Judgment and a Response to Ms. Lugo's Motion for Summary Judgment on October 25, 2021. [ECF No. 18]. Ms. Lugo filed her Reply in support of her Motion for Summary Judgment on November 23, 2021. [ECF No. 20].

Both parties' Motions are fully briefed and ripe for adjudication.

## III.    THE SEQUENTIAL EVALUATION PROCESS

Eligibility for DIB benefits requires that the claimant be disabled. 42 U.S.C. §§ 423(a)(1)(E), 1382c(a)(3)(A)–(B). A claimant is disabled if she is unable to engage in substantial gainful activity by reason of a medically determinable impairment that can be

expected to result in death, or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *Bacon v. Comm'r of Soc. Sec.*, 861 F. App'x 315, 317 (11th Cir. 2021). A plaintiff bears the burden of proving she is disabled within the meaning of the Social Security Act. 20 C.F.R. §§ 416.912(a), (c).

Here, the ALJ concluded that Ms. Lugo was not disabled prior to March 5, 2020, pursuant to Sections 216(i) and 223(d) of the Social Security Act based on the five-step sequential evaluation process that must be applied to determine whether a claimant is disabled. (R. 12). *See* 20 C.F.R. § 416.920(a)(1); *Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015).

At step one of this process, the ALJ must determine whether the claimant is unable to engage in substantial gainful activity ("SGA"). *See* 20 C.F.R. § 404.1520(b). SGA is defined as work activity that is both substantial and gainful. 20 C.F.R. § 404.1572(a). Generally, if a claimant's labor earnings are above a specific level set out in the regulations, it is presumed that she has demonstrated the ability to engage in SGA. 20 C.F.R. §§ 404.1574, 404.1575. If a claimant can engage in SGA, the ALJ will find that she is not disabled. 20 C.F.R. § 404.1571.

At step two, the ALJ must determine whether the claimant has a severe medically determinable mental or physical impairment ("MDI") or a combination of impairments. 20 C.F.R. § 404.1520(c). An impairment or combination of impairments is severe if it significantly limits an individual's physical or mental ability to perform basic work activities. *Id.* If the claimant does not have an MDI or combination of impairments that is severe, she is not considered disabled. *Id.*

At step three, the ALJ must determine whether the claimant's impairment or combination of impairments is of a severity that meets or medically equals the criteria of an

impairment listed in Appendix 1 to Subpart P of Part 404, Title 20 of the Code of Federal Regulations. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. If so, the claimant is disabled. *Id*. If not, the analysis proceeds to the next step. *Id*. Before considering step four, however, the ALJ must first determine the claimant's Residual Functional Capacity ("RFC"). 20 C.F.R. § 404.1520(e). A claimant's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. § 404.1545. The ALJ must make this determination while stating "with particularity the weight given to different medical opinions and the reasons therefor." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1321 (11th Cir. 2021) (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011)).

At step four, the ALJ must determine whether the claimant can perform her past relevant work, in light of her RFC. 20 C.F.R. § 404.1520(f). Past relevant work means work performed (either in the manner claimant actually performed it or as it is generally performed in the national economy) within 15 years prior to the date claimant's disability must be established. 20 C.F.R. §§ 404.1560(b), 404.1565. If the claimant has the RFC to do her past relevant work, she is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is unable to do any past relevant work, the analysis proceeds to the final step.

At the fifth and final step, the ALJ must determine whether the claimant is able to do any other work considering her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). If the claimant can do other work, she is not disabled. *Id*. If she is unable to do other work, she is disabled. *Id*. At step five, the burden temporarily shifts to the Commissioner to show the existence of other jobs in significant numbers in the national economy that the claimant can perform, given her impairments. 20 C.F.R. §§ 404.1512, 404.1560(c). The ALJ

13

makes this determination by considering both the Dictionary of Occupational Titles and testimony from an impartial vocational expert. *See Buckwalter*, 5 F.4th at 1321.

## IV.   THE ALJ'S FINDINGS

Applying the foregoing sequential evaluation process to Ms. Lugo's claim for benefits, the ALJ found that: (1) Ms. Lugo has not engaged in SGA since the alleged onset date of December 28, 2016; (2) her "degenerative disc disease and status post right thumb surgery" are severe impairments; however, (3) her combination of impairments does not meet or medically equal the severity of one of the listed impairments, including Listings 1.02 and 1.04. (R. 13–14).

At step four, the ALJ determined that Ms. Lugo was unable to perform her past relevant work. (R. 18). However, the ALJ found that Ms. Lugo has the RFC to perform a reduced range of sedentary work. (R. 14). Specifically, the ALJ found that Ms. Lugo can lift up to ten pounds occasionally and less than ten pounds frequently; stand and/or walk for four (4) hours and sit for six (6) hours in an eight-hour day; occasionally climb ramps and stairs, but never climb ladders, ropes, and scaffolds; occasionally balance, stoop, kneel, or crouch, but never crawl; frequently handle and finger with her right upper extremity; and can have no exposure to hazards, such as unprotected heights. (R. 14–15).

The ALJ found the opinions of the state agency review physicians, Dr. Goldblas and Dr. Junejo, that Ms. Lugo was limited to a range of sedentary work, persuasive as they are supported by the record. (R. 17). On the other hand, the ALJ found the opinions of Ms. Lugo's treating physicians, Dr. Lee and Dr. Macek, that Ms. Lugo was unable to perform even sedentary work, unpersuasive as they are not supported by the record. (*Id.*). Specifically, the ALJ also found these opinions are inconsistent with the physical therapy notes, which indicate that Ms. Lugo was cleared for sedentary work, and inconsistent with Ms. Lugo's

14

statements that she was independent regarding activities of daily living and that her pain was only moderate. (R. 17–18).

At the fifth and final step, the ALJ found that prior to March 5, 2020, the date Ms. Lugo's age category changed to an individual closely approaching advanced age, Ms. Lugo could perform other jobs that exist in significant numbers in the national economy based on the representative occupations identified by the VE, including call out operator, charge account clerk, and addresser. (R. 19–20). The ALJ found that Ms. Lugo became disabled as of March 5, 2020, pursuant to Medical-Vocational Rule 201.14. (R. 20).

Therefore, the ALJ determined that Ms. Lugo was not disabled prior to March 5, 2020, pursuant to Sections 216(i) and 223(d) of the Social Security Act, but became disabled as of March 5, 2020 through the date of ALJ's Decision. (R. 21). The ALJ also noted that medical improvement is expected with appropriate treatment and, therefore, recommended a continuing disability review in twelve months. *Id.*

## V.   ISSUES RAISED IN THE PARTIES' MOTIONS

In her Motion for Summary Judgment, Ms. Lugo asserts three challenges: (1) the ALJ failed to apply the correct legal standards at step three of the sequential evaluation process; (2) the ALJ failed to apply the correct legal standards to Ms. Lugo's testimony regarding her pain and limitations; and (3) she is entitled to a legitimate valid hearing before an ALJ who has lawful authority to hear and decide her claim based on valid legal authority. Pl.'s Mot. at 1–2.

Based on these challenges, Ms. Lugo contends the ALJ's Decision is not supported by substantial evidence and is the result of legal error. Ms. Lugo seeks a remand for further administrative proceedings for the period prior to March 5, 2020. *Id.* at 13–14. Alternatively, she seeks remand for a *de novo* hearing "before a new ALJ who does not suffer from the

15

unconstitutional taint of having previously heard and decided this case when the ALJ had no lawful authority to do so." *Id.* at 13.[3]

The Commissioner filed a Response and Cross-Motion for Summary Judgment arguing that the final decision finding Ms. Lugo is not disabled prior to March 5, 2020 is supported by substantial evidence and that the correct legal standards were applied. [ECF No. 18]. The Commissioner's specific arguments in response to Ms. Lugo's challenges are discussed below.

## VI.    APPLICABLE LEGAL STANDARDS[4]

The Court's review of the ALJ's decision is limited to determining whether the decision is supported by substantial evidence and whether the correct legal standards were applied. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)). Substantial evidence is more than a scintilla but less than a preponderance. *Id.* (citations omitted); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). It is such relevant evidence that a reasonable person would accept as adequate to support a conclusion. *Buckwalter*, 5 F.4th at 1320. A court must defer to the ALJ's decision if it is supported by substantial evidence, even if the preponderance of the evidence weighs against it. *Id*. The Court may not redecide facts, reweigh the evidence, or substitute its judgment for that of the ALJ. *Id*. Although factual findings enjoy such deference, the ALJ's

---

[3] Ms. Lugo does not challenge the favorable decision, issued by the same ALJ who found she was not disabled prior to March 5, 2020, regarding her disability and right to receive benefits beginning on March 5, 2020. Pl.'s Mot at 1.

[4] The standard of review in DIB cases is the same as the standard for SSI cases. 42 U.S.C. § 1383(c)(3). Consequently, the case law addressing SSI is generally applicable to DIB cases. *See Patterson v. Bowen*, 799 F.2d 1455, 1456 n.1 (11th Cir. 1986).

legal analysis and conclusions are reviewed *de novo. Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

## VII.   DISCUSSION

Ms. Lugo's challenges to the ALJ's Decision are addressed below.

### A. *Whether Substantial Evidence Supports The ALJ's Finding That Plaintiff's Spinal Impairment Did Not Meet Or Medically Equal The Criteria Of Listing 1.04.*

Ms. Lugo first argues the ALJ made a conclusory finding that her degenerative disc disease, or spinal impairment, did not meet Listing 1.04. Pl.'s Mot. at 5–7. Specifically, Ms. Lugo asserts her spinal impairment meets or equals the requirements of Listing 1.04, involving musculoskeletal disorders, and points to medical evidence in the record supporting her assertion that her spinal disorder was of listing level. *Id.* According to Ms. Lugo, the June 2019 MRI scan of her lumbar spine reveals that she has facet arthrosis resulting in compromise of her L5 nerve root as required by Listing 1.04. *Id.*

The Commissioner concedes the June 2019 MRI scan "may show that Plaintiff's degenerative disc disease resulted in compromise of a nerve root or the spinal cord as required by the introductory paragraph of Listing 1.04." Resp. at 5. Nevertheless, the Commissioner contends that Ms. Lugo failed to meet her burden of proving that her impairments met or medically equaled Listing 1.04 because she failed to prove that her impairments satisfied all the criteria in subsection A of Listing 1.04 for any consecutive twelve-month period. *Id.* According to the Commissioner, although Ms. Lugo's medical examiners noted on some occasions that she displayed a reduced range of motion in her lumbar spine and positive straight leg raising (as required to satisfy the criteria under Listing 1.04), these findings were not done "on a consistent basis." *Id.* The Commissioner also points to the state agency

17

medical consultant, Dr. Junejo's finding that Ms. Lugo's impairments did not meet or medically equal Listing 1.04. *Id.*

In her Reply, Ms. Lugo asserts the Commissioner fails to cite any authority in support of the Commissioner's assertion that Ms. Lugo's examiners had to document her physical limitations stemming from her spinal disorder "consistently" in order to satisfy the criteria under Listing 1.04. Pl.'s Reply at 1. Additionally, Ms. Lugo asserts the Commissioner is improperly citing post hoc justifications (*i.e.*, Dr. Junejo's report) to account for the ALJ's failure to properly evaluate whether Ms. Lugo's spinal disorder met the requirements of Listing 1.04. *Id.* at 2.

"The Listing of Impairments describes, for each of the major body systems, impairments which are considered severe enough to prevent a person from doing any gainful activity." *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (citing 20 C.F.R. § 404.1525(a)). If a claimant can meet a listed impairment or otherwise establish an equivalence, then a claimant is presumptively determined to be disabled, and the ALJ's sequential evaluation of a claim ends. *Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984). If an impairment manifests only some of the criteria, then it does not qualify, no matter how severe the impairment. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

The burden is on the claimant to show that she meets the listings. *Wilkinson ex rel. Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987). To meet a listing, a claimant must have a diagnosis included in the listings, and "must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement." *Wilson*, 284 F.3d at 1224 (citing 20 C.F.R. § 1525(a)–(d)); *see also* 20 C.F.R. § 404.1509 (stating the duration requirement means that an impairment "must have lasted or must be expected to

last for a continuous period of at least 12 months"). "If a claimant has more than one impairment, and none meets or equals a listed impairment, the Commissioner reviews the impairments' symptoms, signs, and laboratory findings to determine whether the combination is medically equal to any listed impairment." *Id*. (citing 20 C.F.R. § 404.1526(a)).

Under paragraph A of Listing 1.04, disorders of the spine (*e.g.*, herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture) are defined as those:

> resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Part 404, Subpart P, Appendix 1, Section 1.04. For a disorder of the spine to meet Listing 1.04, "the simultaneous presence of all of the medical criteria in paragraph A must continue, or be expected to continue, for a continuous period of at least 12 months." Social Security Acquiescence Ruling (AR) 15-1(4), 80 FR 57418-02, 2015 WL 5564523, at *57420 (Sept. 23, 2015) (citing 20 C.F.R. §§ 404.1525(c)(4), 416.925(c)(4)). Stated differently, when the paragraph A criteria "are scattered over time, wax and wane, or are present on one examination but absent on another, the individual's nerve root compression would not rise to the level of severity required by listing 1.04A." *Id.*

Here, the ALJ found that Ms. Lugo's impairments did not meet or medically equal the severity of any listed impairment, including Listings 1.02 and 1.04. (R. 14). In regard to Listing 1.04, the ALJ specified:

> [Ms. Lugo's] degenerative disc disease does not meet listing § 1.04 because the record does not demonstrate compromise of a nerve root (including the cauda

> equina) or the spinal cord with additional findings of: A) evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising; or B) spinal arachnoiditis; or C) lumbar spinal stenosis resulting in pseudoclaudication.

*Id.* In assessing Ms. Lugo's physical RFC, the ALJ noted Ms. Lugo's testimony that she experiences right hand weakness as well as difficulty bending, sitting for more than fifteen minutes, and standing for more than one minute due to tingling in her feet. (R. 15). The ALJ then stated that Ms. Lugo's longitudinal medical history is inconsistent with her allegations of disability and that the positive objective clinical and diagnostic findings since the alleged onset date in the record do not support more restrictive functional limitations. *Id.*

Additionally, the ALJ considered and discussed Ms. Lugo's treatment records. (R. 16). For example, the ALJ considered a report from Ms. Lugo's consultative examination on February 25, 2019 with Dr. Bagner and noted as follows:

> Physical examination showed marked difficulty with ambulation; however, the claimant did not require an assistive device. There were no sensory or reflex deficits. Straight leg raise testing was positive, but she was not uncomfortable in the seated position. Further, her strength remained intact (Exhibit 6F/Page 2-3). The claimant's diagnostic studies did not reveal the necessary medical findings to support the claimant's allegations of pain and discomfort. Specifically, x-rays of the spine showed only mild degenerative changes. (Exhibit 6F/Page 6-7).

(R. 16). The ALJ further noted that Ms. Lugo's most recent treatment records show that, even though she was discharged from treatment due to her failure to attend scheduled physical therapy sessions (R. 441), Ms. Lugo had been cleared for sedentary work and her work status was characterized as independent and without difficulty, and she continued to have normal musculoskeletal examinations with a normal gait, full range of motion of the extremities, normal and intact muscle strength, and no sensory deficits. (R. 16). Additionally, the ALJ

stated that Ms. Lugo continued to experience moderate back pain. *Id.* Just as importantly, the ALJ specifically discussed the June 2019 MRI scan as follows:

> A June 2019 MRI of the lumbar spine showed a bulge at L1-2 but no stenosis; a tear at L4-5 without stenosis; and moderate neural foraminal encroachment at L5-S1 with nerve root impingement (Exhibit 11F/Page 3). Despite these findings, surgery was never recommended.

(R. 16).

The ALJ's discussion of the record evidence related to Ms. Lugo's spinal impairments in evaluating her RFC sufficiently explains and clarifies the ALJ's step-three finding that Ms. Lugo's impairments do not meet or medically equal the criteria of Listing 1.04. Therefore, the undersigned finds that the ALJ's Decision is supported by substantial evidence in the record.

The undersigned has considered Ms. Lugo's arguments that the ALJ's step-three determination is erroneous because there is evidence in the record to support a finding that her impairments meet Listing 1.04. In her Motion, Plaintiff cites to treatment notes of physical therapy sessions from January 2018 submitted by Rovy Samson, P.T., who assessed muscle tightness, palpable tenderness, and decreased mobility of the lumbar spine. Pl.'s Mot. at 6 (citing R. 371–75, 393, 410).) Ms. Lugo also cites the records from her April 20, 2018 consultative examination with Jaimie Bick, P.T., in which Bick noted "a musculoskeletal pattern of impaired joint mobility, motor function, muscle performance, range of motion . . . associated with spinal disorders." *Id.* (citing R. 419). She also points to various treatment and examination notes at which muscle weakness, sensory disturbances, and two positive straight leg tests were noted by her physical therapists and treating physicians. (*Id.* at 7 (citing R. 393, 410, 418–19, 422, 425, 428, 431, 434, 437, 440, 444). And, as previously indicated, Ms. Lugo describes the results of the June 2019 MRI scan of her lumbar spine as showing facet arthrosis resulting in compromise of her right exiting L5 nerve root. *Id.* at 6 (citing R. 465–66).

To be clear, the evidence cited by Ms. Lugo certainly meets some of the medical criteria of Listing 1.04, but it does not establish a simultaneous presence of *all* of the criteria, as is required to meet the Listing. *See* AR 15-1(4), 2015 WL 5564523, at *57420; *see also Robinson v.* Saul, No. 20-60564-CIV, 2021 WL 1520724, at *12 (S.D. Fla. Jan. 26, 2021) (Snow, J.), (finding the ALJ did not err in rejecting the plaintiff's claim that his degenerative disc disease met or medically equaled Listing 1.04 where the plaintiff failed to provide sufficient evidence to demonstrate each of the characteristics set forth in paragraph A of that listing and the medical record indicated "no evidence of limitation in the Plaintiff's range of motion; evidence of only short-term loss of motor strength (4/5 in the lower extremities) only during the 3-month period of October to December 2018, and only a single instance of positive straight leg raising in June 2018"), *report and recommendation adopted*, 2021 WL 1185485 (Dimitrouleas, J.).

Notably, at the February 25 and May 16, 2019 examinations, the medical examiners noted that Ms. Lugo did not exhibit any motor, sensory, or reflex loss or abnormalities in the extremities. (R. 410, 444). As noted above, Ms. Lugo bears the burden of establishing that her spinal impairment meets or medically equals Listing 1.04. *Wilkinson*, 847 F.2d at 662.

Based on the record before the Court, the undersigned finds that the ALJ's determination that Ms. Lugo did not satisfy her burden of establishing that her impairment meets or medically equals the criteria of paragraph A of Listing 1.04 is supported by substantial evidence and the correct legal standards were applied. Plaintiff's Motion should therefore be denied with regard to the ALJ's finding that she did not meet or medically equal the criteria of Listing 1.04.

**B. Whether The ALJ Properly Evaluated Ms. Lugo's Testimony Regarding Her Pain And Limitations.**

Ms. Lugo next asserts the ALJ's reasons for rejecting her testimony regarding pain and limitations are not based on the correct legal standards or supported by substantial evidence. Pl.'s Mot. at 9–10. More specifically, Ms. Lugo contends that the ALJ did not discuss with specificity what activities of daily living Ms. Lugo performed that conflicted with her testimony regarding her pain and limitations. *Id.* She also argues that the ALJ failed to articulate any basis for finding that her subjective pain testimony was not credible. *Id.* In response, the Commissioner argues the record as a whole provides substantial evidence to support the ALJ's findings that Ms. Lugo's subjective statements about her symptoms and limitations were inconsistent with the medical and other evidence. Resp. at 8–9.

In *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991), the Eleventh Circuit established the standard for evaluating a claimant's subjective complaints. Pursuant to *Holt*, the claimant must show: (1) evidence of an underlying medical condition, and either (2) objective medical evidence that confirms the severity of the alleged symptoms or the restriction arising therefrom, or (3) the objectively determined medical condition is such that it can reasonably be expected to give rise to the claimed restriction. *Id.*

"When evaluating a claimant's subjective symptoms, the ALJ must consider things such as (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) adverse side effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms." *Davis v. Astrue*, 287 F. App'x 748, 760 (11th Cir. 2008) (citing 20 C.F.R. § 404.1529(c)(3)(i)–(vi)). After considering the claimant's subjective complaints, "the ALJ may reject them as not credible, and that determination will be reviewed for substantial

23

evidence." *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (citing *Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir. 1984)).

When discrediting a claimant's subjective allegations of disabling symptoms, the ALJ must articulate "explicit and adequate" reasons for doing so, or "the implication must be so clear as to amount to a specific credibility finding." *Foote v. Chater*, 67 F.3d 1553, 1561–62 (11th Cir. 1995). The ALJ must consider "all evidence, including subjective statements about the intensity, persistence, and functionally limiting effects of pain [as well as] the objective medical evidence, laboratory findings and statements from treating or nontreating sources about how the symptoms affect the claimant in deciding the issue of disability." *Jarrell v. Comm'r of Soc. Sec.*, 433 F. App'x 812, 814 (11th Cir. 2011) (citing 20 C.F.R. § 404.1529(c)(4)).

"Credibility determinations are, of course, for the [ALJ], not the courts." *Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985). Moreover, this Court is required to uphold the ALJ's credibility determination if it is supported by substantial evidence. *Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980).[5] As the Eleventh Circuit has explained:

> Although this circuit does not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court. The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole.

*Dyer v. Barnhart*, 395 F.3d 1206, 1210–11 (11th Cir. 2005) (internal quotations and citations omitted).

---

[5] The Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

A review of the record and evidence, including Ms. Lugo's testimony regarding her pain and limitations, reflects the ALJ articulated specific reasons for not crediting Ms. Lugo's testimony regarding the intensity, persistence, and limiting effects of her disabling symptoms. The ALJ explained, in relevant part:

> The claimant's longitudinal medical history is inconsistent with her allegations of disability. The consistency of the claimant's allegations regarding disabling symptoms and limitations, in comparison to the objective evidence, is diminished because those allegations are greater than expected in light of the objective evidence of record. The positive objective clinical and diagnostic findings since the alleged onset date detailed below do not support more restrictive functional limitations than those assessed herein.
> . . .
>
> The record documents evidence underlying the claimant's impairments that could be expected to produce the claimant's reported symptoms. However, the overall evidence does not support the level of symptom intensity, persistence, and functionally limiting effect alleged by the claimant.

(R. 15, 18). In support of this credibility assessment, the ALJ pointed to evidence that Ms. Lugo had characterized her pain as "moderate" on multiple occasions and reported being "independent" in activities of daily living. (R. 18). Additionally, the ALJ noted that "even if [Ms. Lugo's] daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to [her] medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed[.]" *Id.*

Thus, the ALJ provided specific and adequate reasons for discrediting Ms. Lugo's subjective testimony of her pain and limitations. The undersigned finds, therefore, that the ALJ articulated adequate specific reasons supporting her credibility assessment, including that Ms. Lugo's subjective testimony was inconsistent with the available evidence in the record. *See Martin v. Acting Comm'r of Soc. Sec.*, No. 21-11532, 2022 WL 1486387, at *8 (11th Cir. May 11, 2022) ("Here, the ALJ made a clearly articulated credibility finding and pointed to specific reasons for discounting [the claimant's] subjective testimony concerning the

intensity and severity of her impairments—namely, that it was inconsistent with the available evidence in the record.").

The undersigned has reviewed the record and finds that it supports the ALJ's credibility findings. Although Ms. Lugo asserts that she has chronic back pain, treatment notes in the record indicate that physical therapy helped to alleviate Ms. Lugo's pain and improved her mobility. (*See, e.g.*, R. 378 –Treatment note following physical therapy session on January 25, 2018, stating Ms. Lugo "reported temporary relief from moderate pain following last session."; R. 386 – Treatment note following physical therapy session on March 1, 2018, indicating Ms. Lugo "reported less pain and more mobility following last session"; and R. 390 – Treatment note following physical therapy session on March 16, 2018 indicating Ms. Lugo "stated that she felt decreased pain in her lower back after her last therapy session").

Upon review, the undersigned concludes that the ALJ articulated adequate specific reasons supporting her credibility assessment, and as discussed above, the undersigned finds the ALJ's determination that the objective medical findings do not support the disabling limitations alleged is supported by the record. Moreover, despite Ms. Lugo's degenerative disc disorder and testimony regarding pain in the lower back, her treatment with physical therapists and other professionals has been limited and conservative and indicates the condition can be managed with pain medication, as shown by Dr. Lee's referral for a pain management evaluation in May 2019. (R. 445). The record also supports the ALJ's finding that Ms. Lugo's daily activities demonstrate she was not as limited during the relevant time frame as she claims. Despite her allegations of debilitating pain, there is evidence in the record that she was able to and can drive, talk on the phone, use the computer, iron clothes, use the microwave to prepare simple meals, get dressed without assistance, and occasionally shop for groceries. (R. 99, 263–270).

This Court's review is limited. It is not for this Court to question the ALJ's credibility determinations but, instead, to determine whether her determinations are supported by substantial evidence in the record. After a thorough review of the record and evidence, the undersigned finds that the ALJ gave specific reasons for her credibility finding, and these reasons are supported by substantial evidence. Therefore, Ms. Lugo's claim of error regarding the ALJ's evaluation of Ms. Lugo's testimony should also be denied.

**C.  *Whether Ms. Lugo Is Entitled To A New Hearing Based On Her Separation of Powers Argument***

Ms. Lugo contends that the removal provision applicable to the Commissioner, 42 U.S.C. § 902(a), violates the United States Constitution's separation of powers. Pl.'s Mot. at 11–13. In support, Ms. Lugo relies on *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183 (2020), in which the Supreme Court held that it is unconstitutional for an executive agency to be led by a single head who serves for a longer term than the President and can only be removed for cause.

The parties agree that the Social Security Act limits the President's authority to remove the Commissioner without cause in violation of the separation of powers. Def.'s Mot. at 9; *see also* 42 U.S.C. § 902(a)(3). But, as the Supreme Court more recently explained in *Collins v. Yellen*, the holding in *Seila* should not be misunderstood as giving a party entitlement to relief solely based on an unconstitutional removal restriction. 141 S. Ct. 1761, 1788 n.24 ("[T]hat holding [in *Seila*] does not mean that actions taken by such an officer are void *ab initio* and must be undone.") As the Supreme Court further explained, absent a constitutional defect in the method of appointment, actions by an agency official are not void based on the existence of an unconstitutional removal restriction. *Id.* at 1787. Rather, a plaintiff seeking relief on this

basis must show that the unconstitutional restriction actually caused her harm. *Id.* at 1788–89.

Ms. Lugo does not allege any facts that plausibly show that the Social Security Act's statutory tenure protection actually harmed her, nor does she show that the removal restriction affected the ALJ's decision regarding her disability claim. To the extent the harm, if any, identified by Ms. Lugo is the fact that she received a partially unfavorable decision from the ALJ pursuant to the delegation of duties to those officers by the Commissioner, who was operating under an unconstitutional removal clause, such generalized harm is not sufficient "as it would apply to virtually every disability case since the enactment of Section 902(a)(3) and would render meaningless *Collins*'s requirement of direct harm." *Ramos v. Kijakazi*, No. 21-60105, 2022 WL 1105799, at *7 (S.D. Fla. Jan. 26, 2022) (Snow, J.), *report and recommendation adopted*, 2022 WL 1103254 (Apr. 13, 2022) (Scola, J.). Thus, even assuming *arguendo* that the removal provision is unconstitutional, the undersigned finds that reversal or remand of Ms. Lugo's claim is not warranted because she has not established how the allegedly unconstitutional provision directly harmed her or had any actual or possible impact on the partially unfavorable decision she received.

In sum, Ms. Lugo has not demonstrated that she is entitled to a new hearing based on the separation of power challenge to the ALJ's authority nor that she experienced any harm arising from the Social Security Act's removal provision. Accordingly, the undersigned finds that Ms. Lugo's constitutional claims fail and recommends that her Motion for Summary Judgment on these grounds be denied.

## VIII.    CONCLUSION AND RECOMMENDATION

For the reasons set forth above and based on the record before this Court, the undersigned finds that Ms. Lugo has failed to demonstrate that the Commissioner's final decision is not supported by substantial record evidence or that the correct legal standards were not applied.

Accordingly, the undersigned respectfully recommends that the Court **DENY** Plaintiff's Motion for Summary Judgment [ECF No. 17], **GRANT** Defendant's Motion for Summary Judgment [ECF No. 18], and **AFFIRM** the Decision of the Commissioner.

The parties will have fourteen (14) days from the date of receipt of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Raag Singhal, United States District Judge. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in the Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY SUBMITTED** in Chambers at Miami, Florida, this 27th day of March 2023.

MELISSA DAMIAN
UNITED STATES MAGISTRATE JUDGE

Copies to:
Hon. Raag Singhal, *U.S. District Judge*
Counsel of Record

29